# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-2032V
UNPUBLISHED

|   |   |
|---|---|
| MARIA ELMAKKY,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: December 3, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant,*[1] *Law Offices of Leah V. Durant, PLLC, Washington, DC, for \
 Petitioner.*

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[2]

On December 26, 2017, Maria Elmakky filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on November 30, 2016. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and has been conceded by

---

[1] Christopher Williams, another attorney at Ms. Durant's law firm, appeared at Motions Day to argue this case.

[2] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Respondent. Because the parties were unable to resolve damages, the disputed issues were addressed at a Motions Day hearing held on October 29, 2021.

For the reasons set forth below, and as I indicated at the end of the hearing, I find that Petitioner is entitled to a damages award in the amount **$241,539.71 representing $205,000.00 for her past pain and suffering, $27,524.00 for her past lost wages, $8,682.51 for her unreimbursed expenses, and $333.20 to satisfy a Medicaid lien to satisfy the State of New York Medicaid lien.** Petitioner is not, however, entitled to compensation for expected *future* pain and suffering.

I. **Relevant Procedural History**

After this case's initiation, for more than 19 months – from October 2018 through May 2020, the parties engaged in settlement discussions. *See, e.g.,* Status Report, filed March 25, 2020, ECF No. 35 (indicating Petitioner was obtaining updated medical records and planned to update her earlier provided demand). On May 27, 2020, the parties informed me they had reached an impasse. ECF No. 38. Nevertheless, on June 13, 2020, Respondent filed a Rule 4(c) Report conceding entitlement, and I issued a ruling finding Petitioner was entitled to compensation. ECF Nos. 40-41. Approximately two months later on August 19, 2020, the parties reported that they still could not come to an agreement on damages, and I would therefore need to resolve the disputed issues. ECF No. 46.

On October 7, 2020, Petitioner filed updated medical records, plus a declaration supplementing her earlier provided affidavit. Exhibits 20-21, ECF No. 48; *see* Exhibit 9, filed Jan. 16, 2018, ECF No. 7 (Petitioner's Affidavit). Approximately one month later, she filed a report from an economist addressing the amount of lost wages she sought. Exhibits 22-23, filed Nov. 12, 2020, ECF No. 51. Thereafter, I set deadlines for Petitioner's damages brief and an economist report from Respondent. Scheduling Order, issued on docket on Dec. 22, 2020.

Petitioner filed her damages brief on March 17, 2021, and Respondent was ordered to file his damages brief, along with his economist's report (which remained unfiled). Petitioner's Brief on Damages ("First Brief"), ECF No. 57; Scheduling Order, issued on docket on Mar. 18, 2021. At that time, Petitioner sought a lump sum of $220,000.00 and yearly awards of $1,000.00 for past and future pain and suffering, respectively; $181,442.00 for lost wages; and $8,682.51 for out-of-pocket expenses. First Brief at 10.

On April 27, 2021, Petitioner filed a revised report from the same economist, reflecting a reduced amount of $27,524.00 for her lost wages. Exhibit 25, ECF No. 59. A few days later on May 3, 2021, Respondent filed his damages brief advocating for the same amount of lost wages, $27,524.00, but lower amounts of $90,000.00 for past pain

2

and suffering, no amount for future pain and suffering, and $7,572.51 for past expenses. Respondent's Brief on Damages ("First Opp."), ECF No. 60. Asserting that Petitioner suffered a separate shoulder injury, a SLAP tear,[4] in September 2018, Respondent maintained that Petitioner should receive compensation for pain and suffering experienced and expenses incurred up until that date. First Opp. at 4-5, 10. Along with his damages brief, Respondent filed a list of pain and suffering determinations from traditional tort system state court cases and information regarding SLAP tears from the American Academy of Orthopaedic Surgeons and WebMD. Exhibits A-C, ECF No. 60. On June 11, 2021, Petitioner filed her reply brief, confirming the parties had agreed upon the amount of lost wages and countering Respondent's arguments regarding the length of her sequela and appropriate amount for pain and suffering. Petitioner's Reply to First Opp. ("Second Brief"), ECF No. 65.

Although this case was originally scheduled for participation in the June 25, 2021 Motions Day, the proceeding was canceled after Petitioner filed an expert report regarding SLAP tears from Dr. Uma Srikumaran. *See* Order, issued June 22, 2021, ECF No. 70 (granting in part Respondent's motion to suspend the damages hearing); Exhibit 26, ECF No. 68. Respondent was allowed sixty days to file a responsive expert report. Scheduling Order, issued on docket on June 29, 2021.

On August 30, 2021, Respondent filed a status report indicating that he no longer wished to file an expert report, but requested an additional 45 days for further briefing. ECF No. 72. I informed the parties that I wished to include this case in my next Motions Day, scheduled for October 29, 2021, and set an October 15, 2021 deadline for final briefs from the parties. Order, issued Sept. 3, 2021, ECF No. 73.

The parties filed their final briefs as ordered, and Petitioner filed the curriculum vitae ("CV") for Dr. Srikumaran. Respondent's Supplemental Brief on Damages ("Second Opp."), ECF No. 77; Petitioner's Final Brief on Damages ("Third Brief"), ECF No 78. Exhibit 27, ECF No. 76 (CV). In his final brief, Respondent indicated that he "now concurs that the shoulder-related treatments [P]etitioner received between September 2018 and January 22, 2020, including the surgery on December 6, 2019, should be viewed as being SIRVA-related." Second Opp. at 2. Due to his revised position, Respondent advocated for an award of $155,000.00 for *past* pain and suffering, but agreed that Petitioner should received the full amount sought for out-of-pocket expenses ($8,682.51).[5] Second Opp. at

---

[4] SLAP stands for Superior Labrum Anterior Posterior. MEDICAL ABBREVIATIONS at 552 (16th ed. 2020).

[5] As noted in Respondent's final damages brief, due to a typographical error in Petitioner's second and third briefs, there was some confusion regarding the exact amount of damages Petitioner seeks. Second Opp. at 2 n.1 (citing Second Brief at 10). Petitioner's counsel confirmed the correct amount is $8,682.51 by email communication on October 20, 2021, and the parties provided additional confirmation at the October 29, 2021 expedited hearing. *See* Informal Remark, dated Nov. 3, 2021.

2. Respondent also continued to maintain that an award for *future* pain and suffering was not warranted in this case. *Id.* at 3.

At the conclusion of the October 29, 2021 expedited hearing,[6] I orally informed the parties of my determination, which is formally set forth herein.[7]

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

---

[6] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated May 28, 2021; *see also* www.uscfc.uscourts.gov/trans (last visited May 28, 2021).

[7] I first issued a damages decision on November 5, 2021, but withdrew the decision after learning that Petitioner had failed to include an amount needed to satisfy the State of New York's Medicaid lien. *See* Informal Remark, dated Nov. 23, 2021; Order Withdrawing Decision, issued Dec. 2, 2021, ECF No. 84. I am issuing this decision which includes compensation for the Medicaid lien related to Petitioner's SIRVA treatment.

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[8] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including medical records and affidavits filed, and all assertions made by the parties in written briefs or pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case.

#### A.   Parties' Arguments

The parties agree Petitioner should be awarded $27,524.00 for her past lost wages, and $8,682.51 for her past expenses. Third Brief at 1; Second Opp. at 1. Additionally, on November 23, 2021, Petitioner informed me that she had had neglected to include a request for a Medicaid lien to be paid to the State of New York in the amount of $333.20. *See* Informal Remark, dated Nov. 23, 2021; Exhibits 28-29, ECF Nos. 83, 85. Included on all email correspondence, Respondent's counsel indicated Respondent did not dispute that the charges are related to Petitioner's shoulder injury. *See* Informal Remark, dated Nov. 23, 2021. Thus, the only issue to be determined is the appropriate amount of compensation for Petitioner's pain and suffering.

Petitioner has requested $220,000.00 for past/actual pain and suffering, and $1,000.00 per year for future pain and suffering. First Brief at 10; Second Brief at 1; Third

---

[8] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

Brief at 1. To support the amounts she seeks, Petitioner emphasized the lengthy duration of her SIRVA and lack of relief provided by the conservative treatment she received and the first two surgeries she underwent. First Brief at 13. Maintaining that "[o]nly after her third and most recent surgery, and following another round of physical therapy, did [she] begin experiencing moderate improvement in her overall pain level and mobility" (*id.* at 16), Petitioner insisted that she continues to experience SIRVA symptoms. *Id.*; Second Brief at 14; Third Brief at 5.

As comparable cases, Petitioner initially cited *Schoonover* and *Lawson*, in which the relevant petitioners were awarded $200,000.00 and $205,000.00, respectively for *past* pain and suffering.[9] First Brief at 16-17. Additionally, the *Schoonover* petitioner was awarded yearly payments of $1,200.00 for the remainder of her life for *future* pain and suffering. *Schoonover,* 2020 WL 5351341, at *1. In her most recent brief, Petitioner included three more cases involving multiple surgeries and pain and suffering awards of $200,000.00 - *McAuliffe, Welch,* and *McDorman*.[10] Third Brief at 4. In her first damages brief, Petitioner also referenced *Dillenbeck,*[11] to support the contention "that pain and suffering awards are generally increased when loss of employment and career are also considered." First Brief at 17.

In reaction, Respondent maintained Petitioner should be awarded no more than $155,000.00 for her *past* pain and suffering - an amount halfway between the amount he previously proposed (when maintaining that Petitioner's later surgery and sequela were not related to her SIRVA) and the amount Petitioner presently seeks. Second Opp. at 1. He offered no comparable SIRVA cases, but appeared to stand by his earlier arguments that I should consider awards outside the Vaccine Program because Program awards are unreasonably inflated, and because there are a minimal number of reasoned SIRVA decisions.[12] *See* First Opp. at 7-9; Exhibit A (list of traditional tort system awards).

---

[9] *Schoonover v. Sec'y of Health & Human Servs.*, No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020); *Lawson v. Sec'y of Health & Human Servs.*, No. 18-0882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan. 5, 2021).

[10] *McAuliffe v. Sec'y of Health & Human Servs.*, No. 18-1507V, 2020 WL 5079506 (Fed. Cl. Spec. Mstr. July 28, 2020) (this was not a reasoned decision but rather a proffered case); *Welch v. Sec'y of Health & Human Servs.*, No. 18-0074V, 2021 WL 1795205 (Fed. Cl. Spec. Mstr. Apr. 5, 2021); and *McDorman v. Sec'y of Health & Human Servs.*, No. 18-0814V, 2021 WL --- (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (This reasoned decision has not yet been made available to the public).

[11] *Dillenbeck v. Sec'y of Health & Human Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019).

[12] Although Respondent maintained there were approximately 35 reasoned damages decisions in SIRVA cases at that time - early May 2021, internal records show there were at least 62 such decisions in SPU SIRVA cases alone. *See* First Opp. at 7; *Johnson v. Sec'y of Health & Human Servs.,* No. 18-1486V, 2021 WL 4144999, at *5 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (indicating 47 reasoned damages decisions in SPU SIRVA cases as of January 1, 2021); *Berge v. Sec'y of Health & Human Servs.,* No. 19-1474V, 2021 WL

Much of Respondent's prior arguments about the inapplicability of *Schoonover* and *Lawson* as good comparables no longer have much weight, since (as reflected in the increased amount of past pain and suffering proposed) Respondent has effectively conceded that Petitioner's SIRVA symptoms continued past September 2018. However, Respondent continues to argue that the level of pain the *Schoonover* petitioner suffered was more severe. First Opp. at 11. To support his assertion that Petitioner should not be awarded compensation for *future* pain and suffering, Respondent cited the lack of evidence showing ongoing treatment or a permanent disability, as was proven in *Schoonover*. *Id.* at 11-13; *see Schoonover,* 2020 WL 5351341, at *5.

### B.   Analysis

I have previously rejected Respondent's argument that the amounts awarded in proffered cases are the best gauge of the appropriate amount to be awarded, superior to reasoned decisions from the Court and/or the special masters. *Schoonover,* 2020 WL 5351341, at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Nevertheless, data from these decisions provides some information about the general ranges of recovery. *See Berge*, 2021 WL 4144999, at *2-3 (for the most recent data in SPU SIRVA cases).

I also have not previously given great weight to Respondent's citation to pain and suffering determinations from traditional tort system state court cases, noting that Congress intended the "no-fault" system established in the Vaccine Program to be generous. H.R. REP. NO. 99-908, at 12-13 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353-54. Thus, Vaccine Program compensation will inherently exceed what is awarded in civil actions elsewhere. Additionally, the descriptions of the traditional tort system cases proposed by Respondent often lack basic information needed for comparison. *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956, at *18 (Fed. Cl. Spec. Mstr. May 21, 2020). As a result, "SIRVA awards in the Vaccine Program are self-evidently more relevant and apposite." *Id.*

Turning to the specific facts of this case, a thorough review of the medical records reveals that Ms. Elmakky suffered severe pain levels and limited range of motion ("ROM") which failed to abate during the year after vaccination, despite receiving a cortisone injection, taking prescription pain medication, attending 21 sessions of physical therapy ("PT"), and undergoing surgery which consisted of manipulation under general anesthesia

---

4144999, at *3 (Fed. Cl. Spec. Mstr. Aug. 17, 2021) (indicating 69 reasoned damages decisions in SPU SIRVA cases as of July 1, 2021).

and a bursal aspiration.[13] An MRI, performed on February 14, 2017, showed severe subacromial/subdeltoid bursitis resulting in a large amount of bursal fluid, tendinosis, a high grade or partial rotator cuff tear, and SLAP lesion. Exhibit 6 at 1-2. After a second arthroscopic surgery on October 13, 2017, involving rotator cuff repair and debridement, and an additional nine PT sessions, Petitioner obtained some temporary relief. Exhibit 10 at 6-7 (surgical records); Exhibit 11 at 21-50 (PT records). As she stated in her affidavit, executed on January 8, 2018, the day after her October 13, 2017 surgery she felt great, indicating that "the severe pain in [her] shoulder was gone [and she] felt only the normal post-operative soreness in the area of the incisions, but no more pain inside [her] shoulder." Exhibit 9 at ¶ 18.

However, this relief was temporary, and Ms. Elmakky returned for treatment in late September 2018. Exhibit 14 at 1. Throughout 2019, Petitioner continued to report shoulder pain and limited ROM and little relief from pain medication, a cortisone injection, and PT. Exhibit 14 at 2, 10 (lack of relief from pain medications); Exhibit 17 at 1 (entry regarding cortisone injection); Exhibit 18 (PT records). Nevertheless, Petitioner was noted to be working at this time and her symptoms were more moderate than what she experienced during the first year of her injury. Exhibit 14 at 3. Additionally, by Petitioner's own account, she gained short-term relief from visiting Hungarian thermal baths during summer trips to see her mother in 2018 and 2019. Exhibit 21 at 1.

Petitioner's third and final surgery, performed on December 6, 2019, provided the most significant relief. Exhibit 17 at 1-7 (surgical records). By January 6, 2020, she exhibited only "a little bit of deltoid and scapulothoracic weakness" for which she was prescribed PT. Exhibit 17 at 9. She was cleared to return to work on January 11, 2020 (*id.*) and attended her last PT session on January 22, 2020 (Exhibit 19 at 6). In her October 7, 2020 declaration, Petitioner indicated that "the pain in [her] shoulder area and arm was mostly gone except for a little normal tenderness due to the operation" a week post-surgery. Exhibit 21 at 2. She reported that "[w]eeks later, [her] shoulder was pain free, and felt normal again." *Id.* In a second declaration, provided on March 17, 2021, Petitioner again recounted the relief she received, stating "[a]fter my third surgery, I immediately, finally, felt better." Exhibit 24.

I find the range of *past* pain and suffering awards proposed by Petitioner, arising from prior Program reasoned decisions, establishes a persuasive framework for

---

[13] When seen at the emergency room on January 5, 2017, Petitioner reported constant pain at a level of four out of ten. Exhibit 3 at 11. At her initial PT evaluation on May 5, 2017, she described her pain level as currently seven out of ten, ranging from four to ten. Exhibit 7 at 3. Although Petitioner indicated the Medrol prescribed in early May 2017 provided little relief, she acknowledged it is did "help[] her sleep at night[]." Exhibit 5 at 5. Following a manipulation performed under general anesthesia and bursal aspiration in late May 2017 (Exhibit 5 at 18-18), Petitioner continued to report high levels of pain - eight out of ten at its worst, and was assessed as having a disability rating of 43.3 on a scale of 0 to 100. Exhibit 7 at 12-13.

determining the level of the pain and suffering award to be issued in this case. In particular, Petitioner's SIRVA most closely resembles the injury suffered by the *Lawson* petitioner – making the past pain and suffering award from that case the best comparable herein. Although Petitioner's initial pain was more severe, she gained more substantial periods of relief from the surgeries she underwent. In addition, Respondent acknowledged during the Motions Day hearing that Ms. Elmakky's surgical procedures were overall equivalent to what the *Lawson* petitioner experienced. Thus, I find that Ms. Elmakky is entitled to the same amount of past pain and suffering compensation as the *Lawson* petitioner was awarded - $205,000.00.

Petitioner maintains I should award more than this sum, based upon the rationale I expressed in *Dillenbeck.* First Brief at 17. However, Petitioner circumstances do not warrant this increased compensation. Due to her vaccine-related injury, the *Dillenbeck* petitioner was unable to return to her preferred job, as a veterinarian technician, and was forced to seek a different type of employment. *Dillenbeck,* 2019 WL 4072069, at *14. Here, by contrast, Ms. Elmakky worked as a home health aide both *prior to and after* her shoulder injury. *See,* Exhibit 9 at 13; Exhibit 14 at 3; Exhibit 17 at 9. Although her SIRVA prevented her for working during her most severe periods of pain, Petitioner is being compensated for those lost wages. At the October 29, 2021 expedited hearing, Petitioner's counsel indicated, to his knowledge, Petitioner was currently working full-time, without impairment, as a home health aide. Thus, the *Dillenbeck* rationale for providing an increased amount of pain and suffering, in acknowledgement of the permanent loss of job enjoyment *on top of* lost wages, is not pertinent.

Furthermore, I do not include any component of damages for future pain and suffering. Future pain and suffering awards are appropriate "only for cases where a strong showing is made that the claimant has suffered a permanent disability, or there are other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). In this case, Petitioner has not established that the sequela of her SIRVA continued beyond late January 2020, and the record does not establish a notable permanent loss that would justify this component of damages.

### IV.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $205,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. I also find that Petitioner is entitled to the agreed upon amounts of $27,524.00 for her past lost wages, $8,682.51 for her past expenses, and $333.20 to satisfy the State of New York's Medicaid lien.**

...

**I thus award Petitioner total compensation in the amount of $241,539.71 as follows:**

1. **A lump sum payment of $241,206.51, representing compensation in the amounts of $205,000.00 for pain and suffering, $27,524.00 for actual lost wages, and $8,682.51 for actual unreimbursable expenses in the form of a check payable to Petitioner.**

2. **A lump sum payment of $333.20, representing compensation for satisfaction of the State of New York Medicaid lien, payable jointly to Petitioner and New York State Department of Health, and mailed to:**

New York State Department of Health
P.O. Box 415874
Boston, MA 02241-5874

Petitioner agrees to endorse the check to New York for satisfaction of the Medicaid lien.

The Clerk of the Court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.