# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 17-2032V**

|  |  |
|---|---|
| MARIA ELMAKKY, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: May 22, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On December 26, 2017, Maria Elmakky filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the influenza vaccine on November 30, 2016. Petition at 1, ¶ 2. On December 3, 2021, I issued a decision determining entitlement and awarding compensation to Petitioner. ECF No. 86.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

On August 15, 2022, Petitioner filed a motion for attorney's fees and costs (ECF No. 93), requesting an award of $138,490.14 (representing $125,587.90 in attorney's fees, $12,805.49 in litigation costs, and $96.75 in Petitioner's out-of-pocket costs). ECF No. 93 at 2.

Respondent reacted to the motion on August 18, 2022, representing that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring resolution of the amount to be awarded at the Court's discretion. ECF No. 94. On August 19, 2022, Petitioner filed a reply requesting the attorney's fees and costs be awarded in full. ECF No. 95.

On October 12, 2022, Petitioner filed an amended motion, requesting an additional $18,680.00 in costs for work performed by Petitioner's Hungarian translator, bringing the total of attorney's fees and costs sought to $157,170.14. ECF No. 96. The invoice, filed as an attachment to this motion, reflects only a total of 233.5 hours billed at an hourly rate of $80.00 during the period of February 2017 through March 2022, but no individual entries for the performed work. ECF No. 96-2 at 2.

Respondent reacted to the amended motion one week later, on October 19, 2022, reiterating his stance to defer the resolution of the amount to the Court. ECF No. 97. In an additional footnote, he asserted that the translator's "invoice d[id] not provide sufficient information to assess whether the time expended was reasonable." *Id.* at 1 n.1.

On October 21, 2022, Petitioner filed a reply again requesting fees and costs be awarded in full. ECF No. 98. She also provided additional documentation regarding the time billed for Petitioner's translator on November 15, 2022. Exhibit 30, ECF No. 99. The translator still, however, did not provide dated billing records, but did offer some substantiation of approximate activity and time expenditures related to emails, calls, and document preparation and submission.  *Id.* at 1-2.

Because the expert rate requested for the work performed by Petitioner's orthopedic expert, Dr. Uma Srikumaran, was greater than that usually paid in vaccine cases, I delayed acting on Petitioner's motion so the issue could be more thoroughly briefed in a lead case (in which Leah Durant was also attorney of record) being adjudicated by another special master. Approximately one year later, in November 2023, a fees decision was issued in that case. *See Aycock v. Sec'y of Health & Hum. Servs.,* No. 19-0235V, 2023 WL 8869423 (Fed. Cl. Spec. Mstr. Nov. 8, 2023).

2

On January 22, 2024, Respondent filed a third response reiterating his prior position but adding cursory language urging me to consider "the hourly rates paid to experts who appear on behalf of [R]espondent ($375.00)." Respondent's Response to Petitioner's Application for Attorney's Fees and Costs and Request for Higher Expert Hourly Rates ("Res. Last Response") at 4, ECF No. 100. The likely intent of this reference is to compare the sum to Dr. Srikumaran's requested hourly rate ($1,000.00).

Less than one month later, on February 12, 2024, Petitioner filed additional argument on that issue, an affidavit, updated curriculum vitae, and fee schedule from Dr. Srikumaran, and supporting affidavits from other orthopedists and an individual working for a firm that specializes in procuring experts to testify in legal proceedings. Exhibits 31-37, ECF No. 102; Petitioner's Reply to Res. Last Response ("Pet. Last Reply"), ECF No. 103. Petitioner also requests that I strike the response filed by Respondent due to its untimely nature. Reply at 3-4.

Having considered the motion along with the invoices and other proof filed in connection, I find reductions in the amount of fees and costs to be awarded appropriate, for the reasons set forth below.

## ANALYSIS

The Vaccine Act permits an award of reasonable attorney's fees and costs. Section 15(e). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

The petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Hum. Servs.,* 24 Cl.

Ct. 482, 484 (1991). The Petitioner "should present adequate proof [of the attorney's fees and costs sought] at the time of the submission." *Wasson,* 24 Cl. Ct. at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

## ATTORNEY FEES

The rates requested for work performed through the end of 2022 are reasonable and consistent with our prior determinations, and will therefore be adopted. ECF No. 93-1. Regarding the number of hours billed, however, I deem the *total* amount of time devoted to briefing damages to be excessive. *See* Status Report, filed Aug. 19, 2020, ECF No. 46 (reporting an impasse in damages discussions); Petitioner's Brief on Damages, filed Mar. 17, 2021, ECF No. 57; Petitioner's Final Brief on Damages, filed Oct. 15, 2021, ECF No. 78; Hearing Minute Entry, dated Oct. 29, 2021 (regarding the Oct. 29, 2021 hearing). Petitioner's counsel expended approximately 56.2 hours drafting the damages brief, plus 37.0 hours drafting the responsive damages brief, totaling 93.2[3] hours. ECF No. 93-1 at 14-15, 17, 20-22. In addition, drafting of the damages briefs involved the work of *four* attorneys, billing between $266 to $509 per hour, and thus suggests some degree of unnecessary overlap/inefficiency compounding the excessive cost associated with this task.

My above calculation does not include time spent preparing the initial demand which would have informed this later work – 11.8 hours – and I am therefore awarding fees associated with that task in full.[4] Nor am I counting time spent communicating with Petitioner; preparing additional supporting documentation such as affidavits, signed declarations, or lost wages documentation; or preparing for or participating in the Expedited Motions Day hearing, which is also being awarded in full. *See,* e.g., ECF No. 93-1 at 15, 22 (entries dated 10/13/20 (third entry), 10/6/21, and 10/14/21).

---

[3] These totals are calculated as follows: 23.7 hours billed on 8/24/20, 8/27/20 (third entry), 8/28/20, 9/15/20, and 11/11/20 at a rate of $395 and 13.5 hours billed on 3/17/21, 5/3/21, and 6/11/21 at a rate of $420 by Leah Durant; 14.5 hours billed on 8/25/20, and 8/26/20 at a rate of $484 and 21.0 hours billed on 5/13/21, 5/14/21, and 10/15/21 at a rate of $509 for Michael Milmoe; 13.0 hours billed on 6/3/21 and 6/8/21 at a rate of $325 by Christopher Williams; and 7.5 hours billed on 3/11/21 and 3/12/21 at a rate of $266 by Lindsay Bainbridge. ECF No. 93-1 at 14, 17, 20-22.

[4] This time was billed in late 2018 through early 2020, using hourly rates of $377 and $380 for Leah Durant and $150 and $160 for the paralegal, and results in $3,921.50 in attorney's fees. ECF No. 93-1 at 6, 8-10, 12.

It is, however, otherwise unreasonable for counsel to spend so much time briefing the issue of damages once the sum in question is calculated, and where the issues presented are not complex. I have identified numerous cases (which may reasonably be compared to time spent in this matter),[5] in which attorneys have accomplished this task in about half the time.[6] *See,* e.g., *M.F. v. Sec'y of Health & Hum. Servs.*, No. 21-0970V (Apr. 9, 2024) (13.0 and 7.8 hours billed for drafting a damages brief and responsive damages brief, respectively); *Axelrod v. Sec'y of Health & Hum. Servs.*, No. 21-0980V (Mar. 29, 2024) (11.9 and 12.5 hours billed for drafting a damages brief and responsive damages brief, respectively); *Benz v. Sec'y of Health & Hum. Servs.*, No. 21-1197V (Mar. 26, 2024) (19.5 and 6.6 hours billed for drafting a damages brief and responsive damages brief, respectively); *Hansler-Point v. Sec'y of Health & Hum. Servs.*, No. 21-0045V (Mar. 26, 2024) (9.6 and 4.9 hours billed for drafting a damages brief and responsive damages brief, respectively); *Dulaney v. Sec'y of Health & Hum. Servs.*, No. 20-1488V (Mar. 26, 2024) (6.6 and 0.5 hours billed for drafting a damages brief and responsive damages brief, respectively); *Glanville v. Sec'y of Health & Hum. Servs.*, No. 19-1973V (Mar. 26, 2024) (8.7 hours billed for drafting a damages brief); *Stokes v. Sec'y of Health & Hum. Servs.*, No. 19-0752V (Feb. 29, 2024) (15.3 and 8.1 hours billed for drafting a damages brief and responsive damages brief, respectively).

The circumstances of this case did not warrant devoting so much time to the damages briefing, even considering the parties' multiple disputed fact issues. *See Elmakky v. Sec'y of Health & Hum. Servs.,* No. 17-2032V, 2021 WL 6285619, at *4-5 (Fed. Cl. Spec. Mstr. Dec. 3, 2022). The parties' views on past pain and suffering differed by $160,000.00. But they resolved the lost wages issue after the initial briefing, with Petitioner acquiescing to Respondent's proposed sum. And other aspects of the demand, such as a future pain and suffering component, turned out not to be well-founded.

Of course, having prevailed in this case, a fees award is appropriate. *See Elmakky*, 2021 WL 6285619, at *7. But the Act permits only an award of a *reasonable amount of* attorney's fees. Accordingly, I will reduce the sum to be awarded for damages briefing (a total of 93.2 hours, or $38,958.50) by *thirty percent*. Such an across-the-board reduction

---

[5] Special masters may use comparisons to attorneys performing similar tasks to determine if hours are excessive. *See Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1518-1521 (Fed. Cir. 1993).

[6] These decisions can be found on the United States Court of Federal Claims website, and/or at  https://www.govinfo.gov/app/collection/uscourts/national/cofc (last visited July 21, 2023).

(which I am empowered to adopt)[7] fairly captures the overbilling evidenced by this work, without requiring me to act as a "green eye-shaded accountant" in identifying with specificity each objectionable task relevant to this one sub-area of work performed on the case. **This results in a reduction of $11,687.55.**[8]

## ATTORNEY COSTS

Petitioner requests $31,582.24 for costs ($31,485.49 in attorney's costs and $96.75 in Petitioner's out-of-pocket costs). ECF Nos. 93-2, 96, 99. This total includes $18,680.00 for translation from English to Hungarian (Petitioner's primary language); $2,061.67 for a medical records review (hourly rate of $250); $6,050.00 for an expert report regarding the sequela of Petitioner's SIRVA injury (hourly rate of $1,000); and $2,750.00 for an economist's review (hourly rate of $275). Petitioner has provided adequate supporting documentation for all non-expert related claimed costs. ECF No. 93-2 at 1-11, 14-24, 27-29. Thus, I will award these costs (totaling $1,943.82).

Although dates for the work described were not provided, the doctor performing the medical review and the economist calculating Petitioner's lost wages provided the exact number of hours billed at hourly rates of $250 and $275, respectively. ECF No. 93-2 at 12-13, 26. I find these rates and the hours billed to be reasonable. And the work performed by these experts was helpful in resolving this case. Therefore, I also will reimburse these costs ($2,061.67 and $2,750.00) in full.

In his invoice, Dr. Srikumaran provided a detailed description of the hours he expended with accompanying dates showing when the work was performed. ECF No. 93-2 at 25. I am not endorsing Dr. Srikumaran's hourly rate for all future cases as set forth in the recent *Aycock* decision (which otherwise does not bind my determination). Nevertheless, I find the overall amount sought for his work in this case ($6,050.00) to be reasonable. And his expert opinion was invaluable when reaching an appropriate resolution. Thus, I also will award the full amount of costs sought for Dr. Srikumaran's work.

---

[7] Specia l masters are permitted to employ percentage reductions to hours billed, provided the reduction is sufficiently explained. *See,* e.g., *Abbott v. Sec'y of Health & Hum. Servs.,* 135 Fed. Cl. 107, 111 (2017); *Raymo v. Sec'y of Health & Hum. Servs,* 129 Fed. Cl. 691, 702-704 (2016); *Sabella v. Sec'y of Health & Hum. Servs.,* 86 Fed. Cl. 201, 214 (2009).

[8] This amount is calculated as follows: (14.5 x $484 x .30) + (21.0 x $509 x .30) + (23.7 x $395 x .30) + (13.5 x $420 x .30) + (13.0 x $325 x .30) + (7.5 x $266 x .30) = $11,687.55.

Regarding the costs sought for the work performed by the Hungarian translator (Richard Mara), it appears that Petitioner did not obtain prior approval as required in all SPU cases.[9] Despite Petitioner's failure in this regard, I find the cost to be warranted in this case. And the translator's proposed hourly rate is appropriate, given his expertise in a language not commonly spoken in the United States. However, a reduction in the amount of hours billed is necessary.

According to the documentation submitted in this case, Mr. Mara provided translation of 641 emails (approximately one-third of which included attachments) and participated in 558 calls (18 of which were conference calls). Exhibit 30 at 1-2. Mr. Mara based the total number of calls upon an average of three calls per month with a paralegal at Ms. Durant's law firm and six calls per month with Petitioner, estimating the former to have lasted seven minutes each and the later to have lasted ten minutes each. *Id.* at 2. Mr. Mara also estimated that he expended an average of ten minutes for each email and thirty minutes for each conference call. *Id.* at 1-2. He attributed the remaining 37.5 hours to translating and helping Petitioner understand, complete, and send certain documents. *Id.* at 2.

An examination of the billing records provided by Petitioner's counsel establishes that the total of time spent by all members of Ms. Durant's law firm interacting with Petitioner totals less than 50 percent of the time billed by Mr. Mara, even when including the full time allotted for multiple entries involving activities which did not involve Petitioner such as attorney preparation, medical records review, document preparation, and updates to the internal file. *See,* e.g., ECF No. 93-1 at 4 (second entry dated 2/15/18), 7 (entry dated 3/12/19), 12 (first entry dated 5/27/20), 18 (first entry dated 3/29/21). And the documentation submitted by Petitioner lacks the details needed to substantiate the amounts claimed. Therefore, I will award only one-half of these costs. **This results in a reduction of $9,340.00.**

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs for successful claimants. Section 15(e). Accordingly, I hereby GRANT Petitioner's Motion for

---

[9] SPU stands for Special Processing Unit. All such cases receive an initial order which states that they should not retain an expert without first consulting me and the opposing party. *See* SPU Initial Order, filed Jan. 2, 2018, at 1, ECF No. 6.

attorney's fees and costs. **Petitioner is awarded the total amount of $136,142.59[10] as follows:**

- **A lump sum of $136,045.84, representing reimbursement in the amount of $113,900.35 for attorney's fees and in the amount of $22,145.49 for attorney's costs, in the form of a check payable jointly to Petitioner and Petitioner's counsel, Leah VaSahnja Durant; and**

- **A lump sum of $96.75, representing reimbursement for Petitioner's costs, in the form of a check payable to Petitioner.**

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Hum. Servs.,* 924 F.2d 1029 (Fed. Cir.1991).

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.